673 So.2d 97 (1996)
Debra A. LEONARD, Appellant,
v.
Joseph H. LEONARD, Appellee.
No. 95-3632.
District Court of Appeal of Florida, First District.
May 7, 1996.
Louis K. Rosenbloum and David H. Levin of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for Petitioner.
Cynthia L. Heir of Anderson & Sellers, Pensacola, for Respondent.
JOANOS, Judge.
By petition for writ of certiorari, we are asked to review an order denying the petitioner-wife's motion for a protective order and overruling her objections to depositions of mental health professionals and production of their records. Petitioner contends the trial court departed from the essential requirements of law by compelling discovery in violation of petitioner's psychotherapist-patient privilege. We agree, and grant the petition.
This cause arises in the context of a child custody dispute in a dissolution of marriage proceeding. The parties were married May 26, 1989, and lived together as husband and wife until 1994 when the wife filed a petition for dissolution of marriage. The parties have two children, who were three and four years of age when the trial court issued the order here under review. The wife's petition *98 sought primary residential custody of the children; the husband's answer and counterpetition also sought primary residential custody of the children, placing the custody matter at issue. In an interim order dated November 4, 1994, the trial court granted primary residential custody of the children to the wife.
On April 11, 1995, the husband served notice that he would take the deposition of Dr. Terry Ptacek, a psychologist who counseled the wife in 1987, in connection with injuries sustained by the wife in an automobile accident. On May 1, 1995, the husband served notice of his intent to seek production of Dr. Ptacek's "entire file for Debra Leonard," then in the possession of Dr. Whibbs. On April 26, 1995, the husband served an unsworn motion for a psychological evaluation and social investigation of the wife, pursuant to section 61.20, Florida Statutes (1993), requesting that the trial court order the wife to submit to a psychological examination. The husband's motion listed eight behaviors of the wife which allegedly indicated a need for a psychological evaluation.[1] On May 17 and 18, 1995, the husband served notices of depositions duces tecum of Lynn McCreary, the wife's psychologist, and of Steve Gantman and Carol Allen, counselors at a local mental health clinic who counseled the wife's son by her previous marriage.
The wife filed an objection to the requested discovery on grounds that the subpoenas sought privileged information of a confidential nature between doctor and patient. The wife also filed a motion for a protective order, asserting as grounds therefor that the three individuals are mental health counselors, subject to the "psychiatrist/psychologist-patient privilege."
On August 17, 1995, the trial court conducted an evidentiary hearing on the parties' motions. With regard to the wife's alleged suicide attempt, the husband testified that in 1987 before the parties were married, he looked through the window of the wife's home and saw her slumped over a chair. The husband said he broke a window to enter the house, and called for an ambulance and the police. The husband further stated the wife was revived by emergency medical technicians, but he offered no other testimony or evidence about the incident or the cause of the wife's alleged unconscious state. The wife said she did not recall the incident.
The husband also referred to the wife's 1987 treatment with Dr. McCreary and Dr. Ptacek, as the source of his use of the term "obsessive-compulsive behavior" to describe the wife's behavior. The husband's allegations that the wife forged various instruments related to instances when the wife allegedly signed the husband's name on credit card applications and furniture store applications, and withdrew funds from the husband's bank account. The wife acknowledged making cash withdrawals from the husband's account, but testified she had done so throughout the marriage with the husband's knowledge and consent. The husband did not dispute the wife's statement that the withdrawn funds were deposited in a joint account for payment of household bills.
The parties offered conflicting testimony with respect to locks on the children's bedroom doors. The husband testified that, as a disciplinary measure, the wife reversed the locks on the children's bedroom doors, preventing them from leaving their rooms. The wife testified that the husband installed hook-and-eye locks on the children's bedroom doors. In a similar vein, the husband provided several examples of the wife's behavior which he viewed as an obsession with cleanliness. The wife countered with allegations of slovenly behavior by the husband.
*99 The wife seeks relief from the trial court's order overruling her objections to discovery pertaining to mental health care provided to the wife and her son from a previous marriage, and authorizing the depositions and production of records of all mental health professionals who treated the wife and her son. The wife does not challenge the trial court's order directing both parties and their children to undergo independent psychological evaluations.
In a child custody dispute, the mental and physical health of both parents is a factor that must be considered by the trial judge in determining the best interests of the child (or children). This does not mean that a spouse places his or her mental health in issue allowing a resulting waiver of psychotherapist-patient privilege, merely by seeking child custody. Further, "mere allegations of mental or emotional instability are insufficient to place the custodial parent's mental health at issue so as to overcome the privilege." Oswald v. Diamond, 576 So.2d 909, 910 (Fla. 1st DCA 1991). See also Mohammad v. Mohammad, 358 So.2d 610, 613 (Fla. 1st DCA 1978); Schouw v. Schouw, 593 So.2d 1200, 1201 (Fla. 2d DCA 1992); Peisach v. Antuna, 539 So.2d 544, 546 (Fla. 3d DCA 1989); Roper v. Roper, 336 So.2d 654, 656 (Fla. 4th DCA 1976), cert. denied, 345 So.2d 426 (Fla.1977). By the same token, the custodial parent's denial of allegations of mental instability does not act as a waiver of the psychotherapist-patient privilege. "To hold otherwise would eviscerate the privilege; a party seeking privileged information would obtain it simply by alleging mental infirmity." Peisach v. Antuna, 539 So.2d at 546.
A parent's implicit waiver of confidentiality as to his or her mental health becomes relevant with respect to a custody dispute, in circumstances such as those described in Miraglia v. Miraglia, 462 So.2d 507 (Fla. 4th DCA 1984), and Critchlow v. Critchlow, 347 So.2d 453 (Fla. 3d DCA 1977). In Miraglia, after being awarded custody of the children, and during the pendency of a request for rehearing, the mother attempted suicide. The court held this event made the wife's mental health vital to the proper determination of the custody issue. 462 So.2d at 508. Similarly, in Critchlow, during the pendency of the dissolution proceeding in which the wife requested custody of the party's young child, the wife voluntarily entered a hospital for mental treatment. The husband then filed an amended petition, seeking custody of the child. The court held the wife's voluntary commitment made her mental health vital to a proper determination of permanent custody, and the psychiatrist-patient privilege cannot be invoked in such circumstances.
A trial judge may balance competing interests with respect to best interests of the child, by directing both parties to submit to an independent psychiatric or psychological examination. Such an approach provides the trial judge with information relevant to the child custody decision, while preserving psychiatrist-patient confidentiality. Schouw, 593 So.2d at 1201.
The trial court in this case appropriately directed both parties and their children to submit to independent psychological evaluations. These court-ordered evaluations will provide information essential to the trial court's determination of the best interests of the children, without invading the wife's psychotherapist-patient privilege. In this regard, we reject the husband's meritless assertion that both he and the independent examiner are entitled to take depositions and examine the records of mental health professionals who treated the wife and her son. See Roper, 336 So.2d at 656. No evidence was presented that the wife was involved in a calamitous event during the pendency of these proceedings, which arguably could bring the child custody dispute in this case within the Miraglia/Critchlow principle. Therefore, the court-ordered independent psychiatric examinations of the parties and their children will accomplish the proper balance of providing the trial court with information relevant to the child custody decision, while maintaining the confidentiality required by the privilege. Roper, 336 So.2d at 657.
Accordingly, because the appealed order departs from the essential requirements of law, we grant the wife's petition for writ of certiorari and quash the order under review. *100 This cause is remanded with directions to grant the wife's motion for protective order.
VAN NORTWICK, J., concurs.
BENTON, J., concurs in result.
NOTES
[1] The wife's alleged behaviors as set forth in the motion for psychological examination were:

a. Attempt to commit suicide.
b. Prior mental evaluations.
c. Utterance of forged instruments on various occasions.
d. Placement of locks on the outside of each child's bedroom, which prevents the child from exiting his room.
e. Manic-compulsive behavior regarding her attention to excessive cleanliness of the children, the Husband's hair, the bathroom, and her car.
f. Manic behavior regarding spending.
g. Sleep disorders.
h. Irrational need to control every aspect of everyone's daily routine.