# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-5125
_____

MATTHEW GARCIA,

    Appellant,

v.

CYNTHIA GUILES,

    Appellee.

_____

On appeal from the Circuit Court for Okaloosa County.
Michael Jones, Judge.

September 5, 2018

PER CURIAM.

Matthew Garcia appeals a final judgment denying his supplemental petition for modification of timesharing. Garcia sought primary custody of his eleven-year-old son, but the trial court found Garcia had not shown a substantial change in circumstances since the parties' divorce. Garcia argues that (i) the court abused its discretion in allowing the child's treating psychotherapist to testify and (ii) that the court denied Garcia due process when it provided inadequate notice before deciding to appoint a guardian ad litem for the child. We affirm.

I.

Garcia married Cynthia Guiles in 2005. He was twenty-five; she was seventeen. They had one child—a son—who is the subject

of this appeal. Garcia and Guiles divorced in Oklahoma in 2010, and the Oklahoma court awarded Guiles primary custody. The case was domesticated to Florida, where Garcia filed the petition at issue.

Garcia's petition alleged that since the divorce, Guiles had relocated with the child nine times, enrolled him in five different elementary schools, ignored his medical and educational needs, and interfered with Garcia's ability to communicate with the child. It further alleged that Guiles's new husband, the child's new step-father, had abused the child. The petition also alleged that Garcia had recently retired from the Air Force and was now in the better position to attend to the child's needs.

The parties stipulated to the appointment of an independent expert to opine as to the social and psychological status of the parties and the child. The expert met with the parties, family members, and the child, as well as the child's treating psychotherapist. On the first day of trial, the expert opined that the child "would be better served" living with Garcia. She acknowledged, though, that it "was difficult to make recommendations" because she believed "both parents are good parents and care deeply for their son."

To rebut this testimony, Guiles sought to introduce the testimony of the child's treating psychotherapist. Garcia argued that if the court were to consider allowing the psychotherapist to testify, it should appoint a guardian ad litem to first determine whether it was in the child's best interest to waive the patient/psychotherapist privilege.* Not wanting to extend the trial, the court ordered the parties to work on resolving the issue overnight and suggested the parties retain a guardian ad litem to expeditiously review the case and render an opinion.

After contacting several attorneys, the parties were able to retain Susan Winterberger. The next morning, Winterberger informed the court that she might be unable to make an informed decision that day and that she believed she would not be "giving it the appropriate attention it deserves with trying to get all that

---

* § 90.503(3)(d) Fla. Stat.

2

accomplished [that] morning." She also told the court that because of other obligations, she might return in the afternoon only to say that she was uncomfortable rendering an opinion. The court indicated it would be best if she were able to provide an opinion that day.

Ultimately, Winterberger testified that waiving the patient/psychotherapist privilege would be in the child's best interest. This opinion was based, at least in part, on the psychotherapist's statement that she was "an advocate for the child" and that she "wanted to testify." The court then allowed the psychotherapist's testimony, but concluded in its written final order that the psychotherapist "display[ed] a distinct bias toward the mother's position" and that the court would "give her recommendation the little weight it deserves." After hearing the testimony of the psychotherapist, the court determined that there had been no substantial change in circumstances since the parties' divorce. The court therefore ordered that the child continue to reside primarily with the mother.

II.

On appeal, Garcia first argues that the court abused its discretion in allowing the psychotherapist to testify. He cites to this court's decision in *Leonard v. Leonard*, which said that "court-ordered independent psychiatric examinations of the parties and their children will accomplish the proper balance of providing the trial judge with information relevant to the child custody decision, while preserving psychiatrist-patient confidentiality." 673 So. 2d 97, 99 (Fla. 1st DCA 1996); *see also Schouw v. Schouw*, 593 So. 2d 1200, 1201 (Fla. 2d DCA 1992) ("A court ordered psychiatric or psychological examination is the suggested method for balancing the court's need to determine the parents' mental health as it relates to the best interest of the child, and the need to maintain the confidentiality between a treating psychotherapist and the patient."). In *Leonard*, the father sought to depose the mother's psychologist and the trial court denied the mother's motion for protective order. 673 So. 2d at 99. The mother then filed a petition for writ of certiorari, which this court granted. *Id.* It is true that in situations where a parent's mental health is called into question, allowing the parties to directly access to the other's medical

3

records, over their objection, is a departure from the essential requirements of law. *Id.*; *Schouw*, 593 So. 2d at 1201; *Roper v. Roper*, 336 So. 2d 654, 656 (Fla. 4th DCA 1976). But when the privilege is waived, "[t]he trial court [is] faced with an entirely different situation." *Roper*, 336 So. 2d at 657. Although "neither parent could have waived the psychotherapist privilege, because the subject matter of the litigation was the child's welfare," *Brown v. Brown*, 180 So. 3d 1070, 1072 (Fla. 1st DCA 2015), the court appointed a guardian ad litem to protect the interests of the child, and the guardian determined that it was in the child's best interest to waive the privilege, *see Phillips v. Nationwide Mut. Ins. Co.*, 347 So. 2d 465, 466 (Fla. 2d DCA 1977) ("The next friend of a minor has power to act on that minor's behalf."). Accordingly, we conclude that the court—having considered the opinion of the child's guardian ad litem that waiving the privilege was in the child's best interest—did not err in allowing the psychotherapist to testify.

## III.

We further conclude that the court did not violate Garcia's due process rights when it appointed a guardian ad litem. *See Vollmer v. Key Dev. Properties, Inc.*, 966 So. 2d 1022, 1027 (Fla. 2d DCA 2007) ("[T]he right to be heard includes the right to introduce evidence at a meaningful time and in a meaningful manner.") (marks and citation omitted). The thrust of Garcia's argument is that the court pressured the guardian to make a decision without affording her time to fully consider the issue. He argues in his brief that "the trial court strongly implied that [it] was not willing to consider a continuance of the trial to have a proper evidentiary hearing on the question presented." Init. Brief at 24. However, no one ever moved for a continuance. After the guardian ad litem was retained, Garcia's attorney stated that—without waiving her objection to the court's decision to appoint a guardian ad litem in the first place—she did not object to the selection of that particular person. She then explained the time constraints the guardian ad litem faced, but still did not move for a continuance.

More to the point, the issue of whether Garcia had sufficient notice and an opportunity to be heard about the guardian ad litem is separate and distinct from the issue of whether the guardian ad litem (once appointed) had sufficient time to make an informed

4

decision. We conclude Garcia has not shown any due process violation.

## IV.

Finally, Garcia argues that even if the psychotherapist's testimony was properly admitted, the court abused its discretion when it found no substantial change in circumstances. We reject this argument as well. A party seeking to modify a parenting plan "must show that (1) circumstances have substantially and materially changed since the original custody determination, (2) the change was not reasonably contemplated by the parties, and (3) the child's best interests justify changing custody." *Reed v. Reed*, 182 So. 3d 837, 840 (Fla. 4th DCA 2016). "[D]emonstrating to the court that there has been a sufficient substantial change in circumstances places an extraordinary burden on the party seeking to modify the underlying judgment." *Korkmaz v. Korkmaz*, 200 So. 3d 263, 265 (Fla. 1st DCA 2016) (marks and citation omitted).

Although there have been changes in the parties' lives, some of these changes were anticipated at the time of the original divorce decree (such as the Garcia's retirement from the Air Force). *Cf. Bryant v. Meredith*, 610 So. 2d 586, 588 (Fla. 2d DCA 1992) ("[T]he mother's retirement from the service cannot constitute a substantial change of circumstances."). Other changes (such as Garcia's general assertion that the mother has not fostered communication between him and the child) do not rise to the level of a substantial change in circumstances. *Sanchez v. Hernandez*, 45 So. 3d 57, 62 (Fla. 4th DCA 2010) (holding that the party seeking to modify a custody order must "prove more than merely an acrimonious relationship and a lack of effective communication in order to show a substantial change"); *Boykin v. Boykin*, 843 So. 2d 317, 321 (Fla. 1st DCA 2003) ("while the evidence in the instant case establishes that the former wife's home had at times been poorly kept and that her children were unkempt, these circumstances alone do not constitute a substantial and material change in circumstances."). Considering all the record evidence, we cannot conclude that the court abused its discretion in concluding there was no substantial change in circumstances to support the petition.

Finally, Garcia insists that "it is clear that it would be in [the child]'s best interests to reside with [him] the majority of the time. Init. Brief at 47. But "[t]he preliminary question of a substantial and material change is a prerequisite to considering the best interests of the child." *Mesibov v. Mesibov*, 16 So. 3d 890, 892 (Fla. 5th DCA 2009); *cf. also Jannotta v. Hess*, 959 So. 2d 373, 374 (Fla. 1st DCA 2007) ("Here, there was evidence that the former wife had . . . remarried, improv[ed] her life financially and otherwise; and was somewhat better able than the former husband to provide a stable home for the children. However, we have repeatedly held that such evidence is insufficient to constitute a substantial and material change in circumstances justifying a change in custody.").

AFFIRMED.

B.L. THOMAS, C.J., and MAKAR and WINSOR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Travis R. Johnson of Meador & Johnson, P.A., Pensacola, for Appellant.

Tonya Holman, Shalimar, for Appellee.

6